The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing parties have shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some minor modifications. Defendants here requested the Full Commission to receive further evidence by the submission of additional documents into the record on the credit issue as well as a doctor's document as to the disability issue. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award. In addition, it is noted that the doctor's statement which defendants now seek to introduce does not properly fall within the purview of newly discovered evidence in that the document existed as of February 17, 1994, and with due diligence could have been discovered and presented by the 1995 closing date of this record.
* * * * * * * * * *
EVIDENTIARY RULINGS
Plaintiff has objected to the authentication of defendants' Exhibit 4, based upon the alleged hearsay testimony of Mr. Joe Ruiz, Manager of Benefits, and thus to the introduction of the "Employer's Statement" as a record of regularly conducted business activity. The basis for credit allowed defendants necessarily rests upon this evidence. A review of the full transcript as well as the document in question indicates to the undersigned that the Exhibit was properly and sufficiently authenticated for the purposes of this workers' compensation claim, and therefore plaintiff's objection is HEREBY OVERRULED, and the document shall remain a part of the official record.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. On 11 June 1992, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant-employer.
3. Travelers Insurance Company was the workers' compensation insurance carrier on the risk.
4. An Industrial Commission Form 22, Wage Chart, for the 52 week period beginning 11 June 1991, is stipulated into evidence.
5. Six pages of plaintiff's medical records from Victor J. Keranen, M.D., are stipulated into evidence.
* * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with some modification and clarification, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. At the time of the initial hearing, plaintiff was a married, thirty-four year old woman. On 22 July 1993, plaintiff had been employed by defendant-employer for approximately eleven and one-half years. Plaintiff has not worked for defendant-employer, or any other employer, since 22 July 1993.
2. On 11 June 1992, plaintiff was employed by defendant-employer as a waste dock attendant. As a waste dock attendant, plaintiff drove a fork lift and shoveled debris using an aluminum snow shovel. The debris plaintiff shoveled included food debris and metal soup cans and lids. Plaintiff would shovel the debris into drums and use the fork lift to haul away and dispose of the debris. Plaintiff was also required to maintain and wash down the waste dock and surrounding areas. Plaintiff spent approximately six hours each day shoveling debris. The remaining two hours of her work shift were spent driving the fork lift.
3. On 11 June 1992, plaintiff was shoveling debris when she felt a "pop" in her back. After her back "popped", her legs became numb and she was unable to walk. Plaintiff was driven from the waste dock at the rear of defendant-employer's facility to the front where she was taken in a wheelchair to the nurse's station. Upon arrival at the nurse's station, plaintiff was laid on her back on an examining table.
4. Plaintiff explained to defendant-employer's company nurse what had occurred. While lying on her back, plaintiff began manipulating her hips and lower back until there was an audible popping sound. Plaintiff then told the nurse that her back had popped back again. She did not ask for permission to see a physician or to go home.
5. On 11 June 1992, defendant-employer's policies or rules allowed injured employees to report work-related injuries to defendant-employer's nurse.
6. Plaintiff continued working for defendant-employer as a waste dock attendant from 12 June 1992 through 22 July 1993. During this period, plaintiff was assisted in the performance of her duties by her co-workers.
7. Plaintiff first sought medical treatment on 18 June 1992 when she presented to Dr. Johnson. Plaintiff informed Dr. Johnson that she had experienced difficulty with her back for approximately four years, that when bending over she experienced pain and a slipping sensation in her back and that she would feel as if she was unable to move her legs. Plaintiff further stated that "it" happened the previous week.
8. Plaintiff did not seek medical treatment for her back again until 6 April 1993. On that date, she had fallen at work and injured her right knee. She also complained of low back pain. Dr. Johnson instructed plaintiff to perform exercises designed to strengthen the muscles of her abdomen and low back. He also instructed her to soak in hot water, take eight hundred milligrams of Ibuprofen three times per day, and to return in three weeks.
9. Plaintiff next presented to Dr. Johnson for back pain on 22 July 1993. On that occasion, plaintiff complained of low back pain and leg numbness. Thereafter, plaintiff's low back pain and leg numbness continued, and Dr. Johnson referred plaintiff to Dr. Keranen, a neurosurgeon, who treated plaintiff from 20 September 1993 through 26 January 1994.
10. Dr. Keranen released plaintiff to return to work on 8 February 1994. There is no evidence of record that Dr. Keranen knew of, or was familiar with, the duties of a waste dock attendant. Plaintiff did not attempt to return to work as a waste dock attendant or in any other position with defendant-employer.
11. Plaintiff continued seeking treatment from Dr. Johnson for low back pain and leg numbness through 18 January 1995. Plaintiff's low back pain and leg numbness were caused by a central disc protrusion at L5-S1 and a mild disc bulge at L4-L5. Plaintiff's protruded and bulging discs resulted from the incident on 11 June 1992.
12. Dr. Johnson has opined that plaintiff is unable to return to her former employment with defendant-employer. As noted above, defendant-employer did not offer plaintiff any further employment at their facilities. In addition, plaintiff made reasonable efforts of four to five months to obtain employment on her own with no success.
13. Plaintiff was incapable of earning wages with defendant employer, or in any other employment, from 23 July 1993 and continuing through the date of the hearing in this matter.
14. During the period of her incapacity to earn wages, plaintiff received short term disability compensation from defendant totaling $5,434.00.
* * * * * * * * * * *
The foregoing stipulations and findings of fact engender the following:
CONCLUSIONS OF LAW
1. On 11 June 1992, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer in that she sustained a back injury as a direct result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2 (6).
2. Plaintiff's failure to provide defendant-employer with written notice of her injury within 30 days of its occurrence was reasonably excused by her oral report of the injury to defendant-employer's company nurse on 11 June 1992. N.C. Gen. Stat. § 97-22.
3. Plaintiff is entitled to payment of temporary total disability compensation at the rate of $333.84 per week from 23 July 1993 and continuing until further order of the Industrial Commission allowing defendants to cease payment of temporary total disability compensation. N.C. Gen. Stat. § 97-29.
4. Defendants are entitled to a credit in the amount of $5,434.00 for disability compensation paid to plaintiff. N.C. Gen. Stat. § 97-42.
5. Plaintiff is entitled to payment of all medical expenses incurred, or to be incurred, as a result of her injury on 11 June 1992 for so long as such examinations, evaluations and treatments tend to effect a cure, give relief or will tend to lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
6. Should defendants choose to provide vocational rehabilitation services for plaintiff at this time, plaintiff shall cooperate fully or be in danger of suspension of benefits for any such periods of justified refusal.
* * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at the rate of $333.84 per week from 23 July 1993 and continuing until further order of the Industrial Commission allowing defendants to cease payment of temporary total disability compensation. Defendants shall receive a credit of $5,434.00 against the disability compensation due plaintiff. Said temporary total disability compensation, to the extent that it has accrued, shall be paid in a lump sum, subject to the attorney's fee approved paragraph 3 of this Award.
2. Defendants shall pay all medical expenses incurred, or to be incurred, by plaintiff as a result of her injury on 11 June 1992 for so long as such examinations, evaluations and treatments tend to effect a cure, give relief, or will tend to lessen plaintiff's period of disability.
3. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this Award shall be paid as follows: twenty-five percent of the lump sum due plaintiff shall be deducted from that amount and paid directly to plaintiff's counsel. Until defendants are allowed by further order of the Industrial Commission to cease payment of temporary total disability compensation, plaintiff's counsel shall receive every fourth weekly check thereafter.
This case is ORDERED REMOVED from the Full Commission docket.
This the __________ day of ________________________, 1996.
 S/ __________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ______________________ COY M. VANCE COMMISSIONER
S/ ______________________ THOMAS J. BOLCH COMMISSIONER
JHB/nwm 2/07/96